# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Patricia Adams, *et al*.,

        Plaintiffs,

        v.

The Medical Protective Company Inc., *et al*.,

        Defendants.

Case No. 1:20cv170

Judge Michael R. Barrett

## <u>OPINION & ORDER</u>

This matter is before the Court upon the Motion to Dismiss Plaintiffs' Third Amended Complaint filed by Defendants Robert Ignasiak,[1] MedPro Group, Inc. and The Medical Protective Company, Inc. ("MedPro"). (Doc. 223). Plaintiffs filed a Response in Opposition (Doc. 228) and Defendants filed a Reply (Doc. 233). In addition, the Court held oral argument on Defendants' Motion to Dismiss. (Doc. 275).

Related to the Motion to Dismiss, Plaintiffs filed a Motion to Supplement their Response to the Motion to Dismiss with two cases, copies of which are highlighted and attached. (Docs. 278, 278-1). Defendants oppose the Motion. (Doc. 279). Plaintiffs' Motion to Supplement is GRANTED in PART and DENIED in part. The Court will consider the two cases cited by Plaintiffs. However, the Court will not consider the highlighted copies of the cases attached to the Motion (Doc. 278-1) which were not filed with the appropriate certification of Plaintiffs' counsel of record.

---

[1]The Court notes that Robert Ignasiak was not named as a defendant in the Third Amended Complaint. (Doc. 218). Therefore, the Court will not address any arguments which pertain to Ignasiak only because the Court concludes that Ignasiak has been dismissed as a party.

More recently, Plaintiffs filed Motions to Supplement the Record seeking to file a copies of a motions to intervene filed by MedPro in a related cases pending before Judge Guy Reece in the Hamilton County Court of Common Pleas.  (Docs. 291, 293).  Plaintiffs' Motions are GRANTED.

Also before the Court is Plaintiffs' Motion for Leave to File their Fifth Amended Complaint.  (Doc. 281).  Defendants filed a Response in Opposition (Doc. 286), but Plaintiffs did not file a reply.

I.     **BACKGROUND**

This case arises out of medical malpractice claims filed by former patients of Abubakar Atiq Durrani, M.D. and his practice group, Center for Advanced Spine Technologies, Inc. ("CAST").  Defendants The Medical Protective Company and MedPro Group, Inc. (collectively referred to as "MedPro") provided professional liability insurance to Durrani and CAST.  The Court has set forth the factual background of this case elsewhere (Doc. 71, PAGEID 2569) and the same will not be repeated here except to the extent necessary to address the pending motions.

The Third Amended Complaint includes claims for (1) intentional infliction of emotional distress (2) "general fraud" (3) "constructive fraud and public policy fraud" (4) "fraud in lack of cooperation defense" (5) civil conspiracy (6) spoliation of evidence (7) "claim under ORC 2307.60" (8) "tri-partite fraud" (9) "settlement fraud" and (10) "detrimental reliance/promissory estoppel."  (Doc. 218).

Defendants moved to dismiss Plaintiffs' claims in the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim on which relief may be granted.  Subsequent to the filing of Defendants' Motion to Dismiss, Plaintiffs

sought leave to file a Fourth Amended Complaint. The Court held oral argument on the motion and denied Plaintiffs leave to file the Fourth Amended Complaint. (Doc. 276, PAGEID 11763).

Plaintiffs now seek leave to file a Fifth Amended Complaint. (Doc. 281). Plaintiffs explain they are adding a claim for "Medical Protective's fraud in attempting to rescind the insurance policies." (Doc. 281, PAGEID 11923). As support for this claim, Plaintiffs cite an order entered by Judge Guy Reece on June 30, 2025 in the Hamilton County Court of Common Pleas. (Doc. 281-1, PAGEID 11966). In the decision, Judge Reece ruled that under on the doctrines of laches, waiver and estoppel, MedPro could not rescind Durrani's medical malpractice insurance policies or have the policies "voided ab initio." (Doc. 281-1, PAGEID 11986-11987). Defendants argue that this new claim must fail as a result of the litigation privilege, and as such, amending the complaint is futile. (Doc. 286).

## II.    ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15 (a)(2). "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001) (citing *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)). "An amendment is futile if, even with the proposed changes, the complaint still fails to state a claim under Rule 12(b)(6)." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue*

*Cross Blue Shield of Michigan*, 146 F.4th 496, 515 (6th Cir. 2025) (citing *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024)).

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The Court will first analyze Plaintiffs' Motion for Leave to File their Fifth Amended Complaint and then turn to Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint. *Accord In re Flint Water Cases*, 969 F.3d 298, 301 (6th Cir. 2020) (approving of district court assessing motions to dismiss and amend simultaneously).

## B. **Proposed Fifth Amended Complaint**

In the proposed Fifth Amended Complaint, Plaintiffs bring claims for (1) intentional

infliction of emotional distress (2) "general fraud" (3) "constructive fraud and public policy fraud" (4) "fraud in lack of cooperation defense" (5) civil conspiracy (6) spoliation of evidence (7) "claim under ORC 2307.60" (8) "tri-partite fraud" (9) "settlement fraud" (10) "detrimental reliance/promissory estoppel" and (11) "fraud in recission."

The claim for "fraud in recission" is the only new claim which appears in the proposed Fifth Amended Complaint and was not included in the Third Amended Complaint. As explained above, the claim is based on an order entered by Judge Guy Reece on June 30, 2025, in the Hamilton County Court of Common Pleas. (Doc. 281-1, PAGEID 11966). The case before Judge Reece is *MedPro v. CAST, et al.,* Case No. A 2304696. In that case, MedPro sought to initially rescind, and then later void the insurance policies it issued to Durrani. Plaintiffs claim that MedPro filed the case as part of a fraudulent scheme to not pay any claims made against the insurance policies between MedPro and Durrani. Defendants respond that this "fraud in recission" claim is barred by Ohio's litigation privilege.

As this Court has recently explained, Ohio's doctrine of litigation privilege:

> is designed to protect parties to a judicial proceeding from defamation claims based on any statement that "bears some reasonable relation to the judicial proceeding in which it appears." *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), paragraph one of the syllabus. The privilege "provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for *statements* made during and relevant to judicial proceedings." *Reister v. Gardner*, 2020-Ohio-5484, ¶ 8 (emphasis in original). For the privilege to apply, the statement at issue "'must be pertinent and material to the matter in hand[,]'" meaning that "'it must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result.'" *Surace* at 231, quoting *Mauk v. Brundage*, 68 Ohio St. 89, 97 (1903). "'Whether or not the occasion gives the privilege is a question of law for the court.'" *Id.*, quoting *Mauk* at 97-98; *see also Modler v. Modler*, 2000 WL 1162033, *3 (2d Dist. Aug. 18, 2000).

*Wasserman v. Weir*, No. 2:24-CV-3935, 2025 WL 1347253, at *4 (S.D. Ohio May 8,

2025). It is important to note that Ohio courts have applied the privilege to claims other than defamation claims. *Id*. at *5 (collecting cases); *see also Nationstar Mortg., L.L.C. v. Ritter*, 2015 WL 5638100, *4 (Ohio Ct. App. Sept. 24, 2015) ("To the extent that the counterclaims for fraud, slander, and intentional infliction of emotional distress are based on Nationstar's filing and refiling of its foreclosure complaints, these claims are clearly barred by the doctrine of absolute privilege.").

The litigation privilege applies to statements that bear "some reasonable relation to the judicial proceeding in which" they appear. *Reister v. Gardner*, 164 Ohio St. 3d 546, 549 (Ohio 2020) (quoting *Surace v. Wuliger*, 25 Ohio St. 3d 229, 233, 495 N.E.2d 939, 943 (Ohio 1986)). As one Ohio court has explained: "In determining whether the words and writings are relevant to the subject of inquiry, great liberality is to be used, as otherwise a party or his attorney may be deterred from prosecuting an action vigorously by fear of personal liability [ ]." *Justice v. Mowery*, 69 Ohio App. 2d 75, 77, 430 N.E.2d 960, 962 (Ohio Ct. App. 1980).

Following this guidance, the Court finds that the litigation privilege applies to Plaintiffs' claim for "fraud in recission." As Judge Reece explained in his written opinion:

> On October 31, 2023, MedPro filed a "Complaint for Rescission" against Dr. Durrani and CAST, alleging that Dr. Durrani "misrepresented material facts" in applying with MedPro for medical malpractice insurance for himself and CAST, and " respectfully demand[ing] * * [that] [t]he Durrani Policies and CAST Policies be rendered [sic] void ab initio, and/or rescinded[,] * * * [and that MedPro be awarded] [c]osts[,] [r]easonable attorney fees[,] and [a]ny other relief the Court deems equitable and just."

(Doc. 281-1, PAGEID 11967) (alteration in original). Judge Reece explained that the original complaint was later amended to include the following allegations:

> "Durrani's (and CAST's) representations and statements in the application were untrue in material respects[,]" and . . . "Had Medical Protective known

6

all relevant and requested information, it would not have issued the policies to Durrani and CAST, and certainly not issued them at the premiums it agreed to accept for issuing those policies."

(Doc. 281-1, PAGEID 11967).   These statements in the pleadings are pertinent and material to MedPro's claim that the contracts between MedPro and Durrani were void or should be rescinded.[2]   As such, Plaintiffs' claim for "fraud in recission" is barred by the litigation privilege.

Because the proposed amendment to add Plaintiffs' claim for "fraud in recission" is futile, Plaintiffs' Motion for Leave to File their Fifth Amended Complaint (Doc. 281) is DENIED.

### C. Motion to Dismiss the Third Amended Complaint

To begin, the Court has previously dismissed Plaintiffs' claims for intentional infliction of emotional distress and "claim under ORC 2307.60." (Doc. 71, PAGEID 2586, 2597).   To the extent that Plaintiffs have added new allegations to support a claim for intentional infliction of emotional distress, these allegations do not, as a matter of law, reach the level of "extreme and outrageous" conduct required to support such a claim. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App. 3d 40, 63, 915 N.E.2d 696, 714 (Ohio Ct. App. 2009) (quoting *Reamsnyder v. Jaskolski*, 10 Ohio St. 3d 150, 462 N.E.2d 392, 395 (Ohio 1984)).   Plaintiffs allege they have experienced "stress" related to this litigation and the underlying medical malpractice litigation.   (Doc. 218, PAGEID 10478-10479).   However, even assuming—as this Court must when deciding a motion to

---

[2]However, as Judge Reece explains, on January 24, 2025, MedPro withdrew its recission claim and acknowledged that rescission cannot be pursued after claims and losses occur.  (Doc. 281-1, PAGEID 11968).  Ultimately, as explained above, Judge Reece did not reach the merits of MedPro's claims.  Instead, Judge Reece found that the claims were barred by the doctrines of laches, waiver and equitable estoppel.  (Doc. 281-1, PAGEID 11987).

dismiss—that Defendants had no good-faith basis for denying and attempting to avoid liability, Defendants' conduct does not rise to the level of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress. *Accord Morrow*, 915 N.E.2d at 714 (concluding that "appellees' attempt to avoid liability cannot be said 'to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (quoting *Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666, 671 (Ohio 1983)). Therefore, to the extent Plaintiffs' claims for intentional infliction of emotional distress and "claim under ORC 2307.60" are repeated in the Third Amended Complaint, or Plaintiffs have brought a new claim for intentional infliction of emotional distress, Defendants' Motion to Dismiss is GRANTED.

The Court also previously dismissed Plaintiffs' claims for conspiracy and fraud which are based on Durrani's flight to Pakistan (Doc. 71, PAGEID 2578); and any claims based on Durrani's February 2018 deposition (Doc. 210). Therefore, to the extent these claims are repeated in the Third Amended Complaint, Defendants' Motion to Dismiss is GRANTED.

The Court now turns to the claims in the Third Amended Complaint which have not been previously dismissed by the Court.

**1. Fraud**

Plaintiffs bring several fraud claims in the Third Amended Complaint: "general fraud," "constructive fraud and public policy fraud," "fraud in lack of cooperation defense," "tri-partite fraud" and "settlement fraud." Defendants maintain these claims are barred by *res judicata* to the extent that they are based on "ongoing" and "continued" fraud; or barred

8

by the litigation privilege to the extent they are based on activity in the litigation between the parties. Before addressing these arguments, the Court will attempt to separate the different types of fraud claims and pair them to the facts alleged in the Third Amended Complaint.

The Court begins with constructive fraud. Under Ohio law:

> Constructive fraud is defined as "a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Cohen v. Estate of Cohen*, 23 Ohio St.3d 90, 91–92, 491 N.E.2d 698 (1986). Unlike actual fraud, "'[c]onstructive fraud does not require proof of fraudulent intent.'" *Id.*, quoting *Perlberg v. Perlberg*, 18 Ohio St.2d 55, 58, 247 N.E.2d 306 (1969). A claim for constructive fraud, however, is dependent on a special confidential or fiduciary relationship, thereby giving rise to a duty to disclose. *Cohen* at 92, 491 N.E.2d 698.
>
> A fiduciary relationship is defined as one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 384, 738 N.E.2d 842 (10th Dist. 2000)

*Schmitz v. Natl. Collegiate Athletic Assn.*, 67 N.E.3d 852, 869 (Ohio Ct. App. 2016). Plaintiffs do not allege that there is a fiduciary relationship between themselves and Defendants. The words "fiduciary," "relationship," "confidential," "confidence" and "trust" do not appear in the Third Amended Complaint. Under Federal Rule of Civil Procedure 9(b), a party who is alleging fraud must "state with particularity the circumstances constituting fraud or mistake." This is because claims based on fraud pose "a high risk of abusive litigation." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 569 n.14). Because Plaintiffs have failed to state with particularity the circumstances constituting constructive fraud, Defendants'

Motion to Dismiss is GRANTED as to this claim and the claim for constructive fraud is dismissed.

As to Plaintiffs' corresponding claim of "public policy fraud"—even assuming such a claim exists—Plaintiffs have not identified any public policy in the Third Amended Complaint. Similarly, Plaintiffs' claim for "tri-partite fraud" does not appear to exist. Moreover, Plaintiffs have not provided any support for this claim beyond what could possibly form the basis of Plaintiffs' claim for "general fraud." Defendants' Motion to Dismiss is GRANTED as to these claims and the claims for "public policy fraud" and "tri-partite fraud" are dismissed.

As to Plaintiffs' claim for "fraud in lack of cooperation defense," the Court has already found that this claim is barred by claim preclusion based on claims Plaintiffs brought in *Aaron v. The Medical Protective Company*, Case No. 1:15-cv-00691 (S.D. Ohio) and then voluntarily dismissed with prejudice August 24, 2018. For the sake of clarity, the Court repeats its previous ruling here:

> As quoted above, in the Second Amended Complaint Plaintiffs state that the *Aaron* case "only brought claims for fraud and conspiracy to commit fraud on Durrani's flight issue;" and that since the dismissal of the *Aaron* case, "bad faith and unfair claims practices continued." Yet, Plaintiffs clearly rely, in part, on Durrani's flight as a basis for their claims in this case. For instance, one section of the Second Amended Complaint bears the title: "DR. DURRANI'S ARREST, INDICTMENT AND FLIGHT: THE CONSPIRACY BEGINS." (Doc. 30, PAGEID 719). Plaintiffs refer to Durrani's flight repeatedly throughout the Second Amended Complaint:

>> 62. On information and belief, Medical Protective, Defendants, including their legal counsel, encouraged and/or participated in Durrani's flight to Pakistan.

>> 63. Medical Protective then attempted to use Durrani's flight to void coverage under their policies of medical malpractice insurance under the so-called non-cooperation clause found within each

policy and cheat Plaintiffs and other Durrani victims from Medical Protective's coverage.

64. Following his flight to Pakistan, Medical Protective obstructed Plaintiffs counsels' efforts to depose Durrani for over five years of pending civil litigation, claiming Durrani did not want to give depositions when Medical Protective knew that he actually wanted to be deposed in cooperation of coverage. This too was used with intent by Medical Protective to void coverage and thwart litigation against Durrani in flagrant violation of KRS §304.12-230 ("Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"). Defendants claimed they could not contact him and/or he refused a deposition, when, in fact, Defendants never even asked him about being deposed.

(Doc. 30, PAGEID 658-599). It is difficult to separate some of the factual basis for Plaintiff's current claims for conspiracy and fraud from the factual basis of the previous claims for conspiracy and fraud which were dismissed with prejudice in the *Aaron* case. Therefore, these claims are barred by claim preclusion and are to be dismissed to the extent that they rely on Durrani's flight to Pakistan.

(Doc. 71, PAGEID 2577-2578). The Court later clarified this ruling during a subsequent hearing and explained that any claim based on information which "was on the table in February of 2018, i.e., the Durrani deposition, that is part of what [ ] is dismissed." (Doc. 213, PAGEID 10020; see also Doc. 213, PAGEID 991) ("So what I'm saying is you've got to have something more than the Durrani deposition saying 'I was always willing to cooperate' because those [claims] have all been covered and dismissed."). Therefore, Plaintiffs' claim for "fraud in lack of cooperation defense" is once again dismissed to the extent that it is based on information learned during Durrani's February 2018 deposition regarding his availability for depositions.

However, in the Third Amended Complaint, Plaintiffs set forth newly discovered evidence of "fraud in lack of cooperation defense." Plaintiffs explain that a review of claims files they have received from Defendants since 2018 has revealed the following:

> Medical Protective sends Durrani the same bogus form letter clearly attempting to "set up" the lack of cooperation fraud. Medical Protective has been sending this despite Durrani's 2018 depositions where he claimed he wanted to defend. A jury will be allowed to conclude Mike Lyon told Durrani to not respond to those letters.
> . . .
>
> The lawyers put in reports that Durrani's "lack of cooperation" is why they MIGHT lose. It is a convenient inclusion and part of the ongoing fraud they document.

(Doc. 218, PAGEID 10486-10488). In addition, Plaintiffs claim that:

> Medical Protective could have gotten Durrani's cooperation countless ways, including emails, calls and asking questions at depositions. They never asked Durrani a single question in the February and March 2018 depositions. They did not want it.

(Doc. 218, PAGEID 10493). According to Plaintiffs, the reason Defendants stopped offering Durrani for depositions is that "Medical Protective loses when Durrani testifies." (Doc. 218, PAGEID 10489).[3]

However, Plaintiffs have not adequately alleged an injury resulting from the "fraud in lack of cooperation defense" claim. With regard to the lack of cooperation defense, Judge Timothy S. Black of this Court ruled in related litigation that MedPro "must demonstrate that Dr. Durrani's failure to cooperate has prejudiced their defense of claims against Dr. Durrani in order to void their insurance coverage." *Med. Protective Co. v. Ctr. for Advanced Spine Techs., Inc*., No. 1:14-CV-05, 2016 WL 6139115, at *3 (S.D. Ohio Oct. 21, 2016). Judge Black explained that prejudice is a factual determination; and

---

[3]If true, it would be difficult for MedPro to show prejudice based on Durrani's failure to testify if his testimony is detrimental to the defense of the medical malpractice cases. In fact, MedPro has itself called into question Durrani's credibility. As part of its Complaint for Recission filed before Judge Reece in the Hamilton County Court of Common Pleas, MedPro alleged that Durrani misrepresented material facts in his application for medical malpractice insurance. (Doc. 281-1, PAGEID 11967).

therefore, MedPro's lack of cooperation defense would need to be determined on a case-by-case basis. *Id*. at *4. Judge Black then explained:

> At this point, the parties have not conducted any discovery as to the effect upon individual underlying cases that Dr. Durrani's absence has had on the proceedings or on the efforts that Plaintiff made to gain his testimony, assistance, or deposition. This absence may affect different cases in different ways depending on the underlying facts of each case and/or the timing of the trial(s). This truth is illustrated by the fact that a number of cases against Dr. Durrani and CAST have already reached a verdict—some in favor of the plaintiff and some in favor of the defendant.

*Id*. Based on the record before the Court now, what was true in 2016 is still true today. The parties in this case have likewise not conducted discovery regarding any potential prejudice MedPro has experienced due to Durrani's absence in the individual underlying medical malpractice cases. In addition, Plaintiffs indicate that between 2011 and 2018, Plaintiffs won verdicts in cases where Durrani testified via video deposition (Doc. 218, PAGEID 10489); and since 2020, Plaintiffs have won 80% of the 114 medical malpractice trials. (Doc. 218, PAGEID 10466). In other words, there have been both plaintiff and defense verdicts and Durrani's absence may affect these cases in different ways depending on the facts of the case. Moreover, Plaintiffs have not identified a single instance of Defendants relying upon the lack of cooperation defense to defeat payment of a judgment in one of these cases. It would be premature for the Court to rule that Defendants' lack of cooperation defense is valid, let alone caused injury to Plaintiffs. It is this "absence of an injury above and beyond the reliance on the misrepresentation itself that is fatal" to Plaintiffs' fraud claim. *See Delahunt v. Cytodyne Techs*., 241 F. Supp. 2d 827, 834 (S.D. Ohio 2003). Therefore, Defendants' Motion to Dismiss is GRANTED as to this claim and Plaintiffs' claim for "fraud in lack of cooperation defense" is dismissed.

13

With regard to "settlement fraud," the Court finds that this claim is merely a re-wording of the third-party bad faith claim that the Court has already dismissed.  (See Doc. 71, PAGEID 2584-2585).  In Ohio, "[a] third party has no cause of action for bad faith against the tortfeasor's insurance company."  *Pasipanki v. Morton*, 61 Ohio App. 3d 184, 185, 572 N.E.2d 234, 235 (Ohio Ct. App. 1990).  Plaintiffs' allegations are a thinly veiled attempt to once again bring a bad faith claim.[4]  The Court notes that Plaintiffs have an avenue to pursue this claim—which they have done elsewhere.  *See, e.g.*, *Tara Brown v. Durrani, et al.*, No. 1:18cv785-MRB, Doc. 83 (S.D. Ohio).  Specifically, Ohio law permits

---

[4]These allegations are as follows:

181. From the beginning of Plaintiff's claims to the present, there has never been one written offer to settle these cases.

182. Judge Guckenberger as early as August 2013, would go off the record at case management conferences and ask why limits had not been tendered by Medical Protective. Michael Lyon would state every time we need discovery and a few trials first to assess our risk and exposure and determine value. Of course, that was not true.

183. From 2013 to the present, the only "concrete" oral offer has been $4,000,000 to settle over 400 cases or only $10,000 a case. There was one $2,000,000 written offer only through another Defendants' counsel or $10,000 a case. This predated the $4,000,000 oral offer.

184. Medical Protective knows they are losing 80% of the trials, all held in the state of Ohio where statistically over 90% of the time the defense wins.

185. From 2013 to 2017, there were no offers. In 2017, there was the above referenced $2,000,000 offer. In 2018, Medical Protective made a bad faith and insulting $4 million global offer to resolve over 400 cases. In 2024, they renewed that same offer.

186. Based upon the years of delay, in 2017, Plaintiffs attempted to settle for $21 million or half of the $42 million. Medical Protective ignored it. Plaintiff received a $2.1 million offer at the Kentucky mediation after they thought they would receive an opening offer of $10 million. The $2.1 million was millions less than the $4.8 million Medical Protective previously claimed was in their algorithm. All of these mediations were fraudulent.

(Doc. 218, PAGEID 10501).

an award of prejudgment interest if the court finds "that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." *Clay v. Ford Motor Co.*, 215 F.3d 663, 672 (6th Cir. 2000) (quoting Ohio Rev. Code § 1343.03(C)(1)). Accordingly, Defendants' Motion to Dismiss is GRANTED as to this claim because Plaintiffs fail to state a claim for "settlement fraud."

Finally, the Court turns to Plaintiffs' claim of "general fraud." Under Ohio law, the elements of a fraud claim are: "(a) a representation or, where there is a duty to disclose, a concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) an injury proximately caused by the reliance." *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003) (quoting *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 570 N.E.2d 1076, 1083 (1991)). As explained above, Plaintiffs' claim of fraud must be plead with particularity. This requires Plaintiffs "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 493 (6th Cir. 2019) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

It is exceedingly difficult to separate the allegations which support Plaintiffs' claim of fraud from other claims which the Court has already dismissed. To begin the process of determining whether Plaintiffs have stated a claim, the Court repeats that Plaintiffs'

claims—whether they are couched in terms of bad faith, fraud or some other cause of action—are barred by *res judicata* due to Plaintiffs' own voluntary dismissal of its claims on August 24, 2018 in *Aaron v. The Medical Protective Company*, Case No. 1:15-cv-00691.[5]  As set forth in this Court's previous ruling, claims which would not be precluded by *res judicata* would include any claims based on any events which took place after the *Aaron* lawsuit was dismissed on August 24, 2018.  (Doc. 71, PAGEID 2580).  The Court explained that what was "left on the table was an ability to try to collect evidence on fraud and conspiracy that occurred after August 24th, 2018."  (Doc. 276, PAGEID 11765).  In addition, "[a] previously undiscovered claim arising from newly discovered facts is not barred by the doctrine of *res judicata*."  *Montgomery v. Vargo*, 107 N.E.3d 799, 803 (Ohio Ct. App. 2018).

Plaintiffs claim that the fraud is "ongoing" and based upon new facts which arose since the 2020 filing of this case.  (Doc. 228, PAGEID 10797).  Plaintiffs point to the following allegedly fraudulent statements: Defendants' promise to settle, Defendants' statement that their customary risk analysis would apply, and Defendants' statements regarding whether Durrani was available for a deposition.  (Doc. 228, PAGEID 10807).  These first two bases for fraud can be discussed together.[6]

---

[5]As the Hamilton County Court of Common Pleas observed in *James Albers v. Michael Lyon, et al.*, No. 1903421 (April 4, 2022), if Plaintiffs were duped into dismissing the *Aaron* lawsuit, "the remedy for Plaintiffs would be the filing of a Fed. Civ. R. 60 (b)(2) Motion . . . requesting the federal court to relieve the Plaintiffs from a final judgment, order or proceeding."

[6]With regard to Defendants' promise to settle, statements made during a settlement meeting are inadmissible under Federal Rule of Evidence 408, but only to the extent that the statements are being offered to "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a)(2).  Here, Plaintiffs are offering these statements to prove fraud, not the underlying medical malpractice claims.  The same analysis applies to the statements regarding the algorithm MedPro purportedly uses to evaluate risk and decide whether to settle claims.

Plaintiffs explain that from 2018 to 2020, they won eighty percent of their cases. According to Plaintiffs, if Defendants were using their customary algorithm, this would have triggered a settlement offer from Defendants. Plaintiffs allege the algorithm was shared with them via counsel in a meeting on January 12, 2017:

> Medical Protective's risk analysis was explained as follows: Plaintiffs must win the medical malpractice case via jury trial and if successful then win a subsequent insurance coverage trial via bench trial. Their model allowed for a 20% success rate for the medical malpractice trials (double the national success rate). Then Medical Protective factored an average verdict of $300,000 (based on their research of Ohio cases and law, i.e., caps on damages, no coverage for the punitive award, etc. Medical Protective claims to have factored in 0 verdicts to multi-million-dollar awards). Lastly, they factored a 20% success rate on having coverage awarded at the bench trial. They claimed this is based on empirical data. 400 total cases (at 20%) is 80 cases x 300k = 24 mil x 20% success rate for coverage = 4.8 million. So, they rounded up and claimed the cases worth $5 million.

(Doc. 218, PAGEID 10466). Plaintiffs explain:

> Plaintiffs relied upon this risk analysis. As a result of this, plaintiffs knew plaintiffs had to prove Medical Protective's "risk analysis" wrong by winning trials. And that is what plaintiffs did. From 2018 when trials began one at a time, followed by group trials after 2020, plaintiffs have won 80% of the 114 trials. Plaintiffs destroyed the algorithm/ "risk analysis" to no avail. Plaintiffs relied upon this to continue the litigation and trying cases. Had plaintiffs known the truth nothing mattered, Plaintiffs could have chosen a different course.

(Doc. 218, PAGEID 10466).

"Generally, fraud is not predicated on a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring." *Yo-Can, Inc. v. The Yogurt Exch., Inc.*, 149 Ohio App. 3d 513, 525, 778 N.E.2d 80, 89 (Ohio Ct. App. 2002) (citing *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742, 607 N.E.2d 1140 (Ohio Ct. App, 1992)). However, even if Plaintiffs were able to show that Defendants had no intention

of settling when they made these statements, Plaintiffs have failed to plead justifiable reliance with particularity and cannot show any injury proximately caused by reliance on Defendants' alleged misrepresentations.  Plaintiffs merely allege that they "could have chosen a different course" if they had known Defendants' true intentions.  (Doc. 218, PAGEID 10466).  Unlike the cases cited by them, Plaintiffs do not claim that they accepted a settlement offer for a lesser amount of money based upon the alleged misrepresentations.  *See*, *e.g.*, *Edwards v. Travelers Ins. of Hartford, Conn*., 563 F.2d 105, 111 (6th Cir. 1977) (under Tennessee law, fraud claim could go forward based on adjuster's representation that insurance company could go no higher than $35,000 even though the company had authorized payment of the policy limit of $50,000).  Instead, Plaintiffs allege that they have rejected the "insulting low ball oral group offers" made by Defendants.  (Doc. 218, PAGEID 10480).[7]  Plaintiffs have proceeded to trial on their underlying medical malpractice claims which—according to Plaintiffs—has resulted in "an average of $500,000 covered verdict in 80% of the trials."  (Doc. 218, PAGEID 10480).  These numbers are greater than the factors included in the so-called algorithm, which would have been based upon a success rate of only 20% and an average verdict of $300,000.  These allegations do not support justifiable reliance upon Defendants' statements regarding settlement or, alternatively, support an injury proximately caused by any such reliance.  Therefore, Plaintiffs have failed to state a claim for fraud based on Defendants' alleged promise to settle and statements about their algorithm.

 The Court now turns to Plaintiffs' fraud claim based upon Defendants' statements regarding Durrani's availability for a deposition.  As previously discussed, this claim

---

[7]Plaintiffs allege that they "received oral group offers of $2 million, $4 million, $10 million and $11 million over eleven years."  (Doc. 218, PAGEID 10485).

necessarily must be based on statements made after Durrani's February 2018 deposition. In the Third Amended Complaint, Plaintiffs allege that since 2018, they have requested Durrani's deposition in this case in order to question him about events which occurred after his last deposition, but Plaintiffs have not been given the opportunity to depose him. (Doc. 218, PAGEID 10480, 10481). Plaintiffs explain:

> A hundred plus trials have been held with refusal to provide Durrani for depositions. This happens at every trial and will in all future trials. It is ongoing. Based upon the history of the deposition issue and Durrani's depositions and his "start/stop" after those, this Court MUST conclude this is an ongoing fraud.

(Doc. 218, PAGEID 10465). Plaintiffs claim that they have "asked for Durrani's depositions and received nothing." (Doc. 218, PAGEID 10481).

As part of the allegations in the Third Amended Complaint, Plaintiffs have reproduced the text of a letter from Attorney Michael Lyon, who serves as Durrani's counsel in the medical malpractice litigation. (Doc. 218, PAGEID 10482). According to the Third Amended Complaint, this letter was emailed to counsel for Plaintiffs and dated July 23, 2024. (Doc. 218, PAGEID 10482). In the letter, Lyon states:

> By way of this letter, I wish to inform you that I have communicated your request for the depositions of Dr. Durrani relative to the Federal Court trials. As soon as I hear from him, I will report accordingly.

(Doc. 218, PAGEID 10482). Plaintiffs allege that "they have not heard from Mike Lyon since." (Doc. 218, PAGEID 10482).

In the Third Amended Complaint, Plaintiffs have also reproduced an email exchange between counsel for Plaintiffs and Attorney Richard Porotsky, who serves as counsel for MedPro in this matter. (Doc. 218, PAGEID 10483). According to the Third Amended Complaint, counsel for Plaintiffs wrote to Porotsky on July 17, 2024:

19

> We want to depose Dr. Durrani. Mike Lyon recently spoke to him and is in regular contact with him. So have Mike set up the deposition for us from Pakistan.

(Doc. 218, PAGEID 10483).  Plaintiffs allege that counsel for Defendants responded that same day:

> I believe you understand that we have been trying to obtain Dr. Durrani's participation in the state court matter (voiding policies), but have received no response. If you want his participation, it seems that the proper procedure is for you to try to notice his deposition or maybe subpoena him. Mike does not represent Durrani in any coverage matters and I do not believe Dr. Durrani has legal counsel on coverage matter. Once you issue a notice or subpoena, then maybe you can email Mike Lyon about it to see if he is willing to pass it along; or we can try to call Mike together if you wish. Let me know, and then we'll proceed from there.

(Doc. 218, PAGEID 10483-10484).  Counsel for MedPro then explained: "Also, please understand that my firm and I are adverse to Dr. Durrani (while Mike Lyon and his firm defend Durrani and represent him in tort cases)."  (Doc. 218, PAGEID 10484).

Plaintiffs maintain that this "wall" between counsel is fraud.  Plaintiffs claim that the resulting injury is that they are unable to question Durrani about this case, including questions about whether Durrani has received Plaintiffs' settlement demands or if he is aware that MedPro has refused to pay judgments in the underlying medical malpractice cases against him.  However, according to the email correspondence included in Plaintiffs' allegations, when counsel for Plaintiffs requested Durrani's deposition, counsel for Defendants and Durrani did not refuse to make Durrani available but instead requested that Plaintiff adhere to the proper procedure for requesting a deposition of a non-party to this litigation.  The Court notes that there is no allegation in the Third Amended Complaint that Plaintiffs have issued a notice of deposition or subpoena to Durrani.  Instead, during the trials in the underlying medical malpractice cases, Plaintiffs

have requested, and received, an absent-defendant instruction. *See*, *e.g.*, *Jones v. Durrani*, 242 N.E.3d 896, 907, (Ohio Ct. App. May 10, 2024); *Brown v. Durrani*, Case No. 1:18cv785 (Doc. 74, PAGEID 1194) (S.D. Ohio). Under the circumstances, Plaintiffs do not state the elements of a fraud claim with sufficient particularity under Rule 9(b). As a practical matter, if Plaintiffs encountered difficulty in obtaining Durrani's deposition in this case, Plaintiffs could have requested a discovery conference with the Court. Therefore, Plaintiffs fail to state a claim for fraud based upon Defendants' statements regarding Durrani's availability for a deposition or the "wall" between counsel for Durrani.

There being no bases for fraud contained in the Third Amended Complaint, Plaintiffs' claims of fraud are DISMISSED.

## 2. Civil conspiracy

"In Ohio, a plaintiff claiming civil conspiracy must establish the following four elements: '(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.'" *AAA Installers v. Sears Holdings Corp*., 764 F. Supp. 2d 931, 941 (S.D. Ohio 2011) (quoting *Aetna Cas. & Sur. Co. v. Leahey Constr. Co*., 219 F.3d 519, 534 (6th Cir. 2000) (citing Ohio law)). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Id*. (quoting *Williams v. Aetna Fin. Co*., 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868 (Ohio 1998)). Under Ohio law, fraud may serve as an underlying unlawful act. *Id*. (citing *Federal Ins. Co. v. Webne*, 513 F.Supp.2d 921 (N.D.Ohio 2007)). However, because the Court has dismissed Plaintiffs' claims for fraud, the claim for conspiracy must fail. *Accord Glassner v. R.J. Reynolds Tobacco Co*., 223 F.3d 343, 354 (6th Cir. 2000) (citing *NPF IV, Inc., v. Transitional Health Servs*., 922 F.Supp. 77, 83 (S.D. Ohio 1996)

("Conspiracy in and of itself does not normally establish a basis for recovery in a civil action in Ohio; rather, there must be an actionable wrong committed as a result of the conspiracy.") (citation omitted) and *Akins v. Zeneca, Inc.*, 1995 WL 452087, at *3–4 (6th Cir. July 27, 1995) (unpublished) (holding that conspiracy claim fails when underlying tort claim fails)).

Because Plaintiffs have failed to state a claim for conspiracy, Defendants' Motion to Dismiss is GRANTED and this claim is DISMISSED.

### 3. Spoliation of evidence

"Ohio is among only a handful of jurisdictions that recognize the independent tort of intentional spoliation of evidence." *Elliott-Thomas v. Smith*, 154 Ohio St. 3d 11, 13, 110 N.E.3d 1231, 1233 (Ohio 2018) (citations omitted). The tort has five elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (Ohio 1993).

Here, Plaintiffs allege that "Defendants willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiffs' evidence including emails, notes and part of the claims file record." (Doc. 218, PAGEID 10505). Specifically, Plaintiffs allege that Joseph Crawford, a regional manager for MedPro, "admitted he deleted emails and personal notes between Mike Lyon and himself during the Durrani litigation." (Doc. 218, PAGEID 10498). The Court concludes that based on these allegations, Plaintiffs have

stated a claim for spoliation and Defendants' Motion to Dismiss is DENIED as to this claim.

### 4. Detrimental reliance/promissory estoppel

"In order to establish a claim for promissory estoppel, a party must establish the following elements: '(1) a clear and unambiguous promise was made; (2) upon which it would be reasonable and foreseeable for the party to rely; (3) actual reliance on the promise; and (4) the party was injured as a result of the reliance.'" *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 59 N.E.3d 758, 768–69 (Ohio Ct. App. 2017) (quoting *Ringhand v. Chaney*, 2014 WL 4180301, *3 (Ohio Ct. App. Aug. 25, 2014)).

Plaintiffs allege that by engaging in settlement discussions, Defendants promised that they would forward Plaintiffs' settlement demands to MedPro officials with decision making capacity. Plaintiffs claim there is no evidence that their demands were forwarded, and Defendants were instead pretending to engage in settlement negotiations. As proof, Plaintiffs cite a statement by a representative of MedPro, McKenzie Walters, that MedPro would never pay these claims. (Doc. 218, PAGEID 10495-10496). Regardless of the veracity of this statement, the Court finds that Plaintiffs have failed to state a claim for promissory estoppel for the same reasons Plaintiffs failed to state a claim for fraud based on Defendants' alleged promise to settle and statements about their algorithm. Therefore, Plaintiffs' claim for "detrimental reliance/promissory estoppel" is DISMISSED.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiffs' Motion to Supplement their Response to the Motion to Dismiss (Doc. 278) is **GRANTED in PART** and **DENIED in PART**;

2. Plaintiffs' Motions to Supplement the Record (Docs. 291, 293) are **GRANTED**;

3. Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 223) is **GRANTED in PART** and **DENIED in PART**;

    a. Plaintiffs' Third Amended Complaint is DISMISSED to the extent that the Court has previously dismissed Plaintiffs' claims for intentional infliction of emotional distress, "claim under ORC 2307.60" and Plaintiffs' claims for conspiracy and fraud which are based on Durrani's flight to Pakistan (See Doc. 71, PAGEID 2586, 2578, 2597);

    b. Plaintiffs' claims for "general fraud," "constructive fraud and public policy fraud," "fraud in lack of cooperation defense," "tri-partite fraud" and "settlement fraud" are DISMISSED;

    c. Plaintiffs' claim for civil conspiracy is DISMISSED;

    d. Plaintiffs' claim for "detrimental reliance/promissory estoppel" is DISMISSED;

    e. Plaintiffs' claim for spoliation of evidence remains pending; and

4. Because the claims being dismissed in this Order are sufficiently distinct from Plaintiffs' claim for spoliation, pursuant to Federal Rule of Civil Procedure 54(b), the Court finds that there is no just reason for delay and the Court hereby **DIRECTS** the Clerk of Courts to enter final judgment as to Plaintiff's claims for intentional infliction of emotional distress, "general fraud," "constructive fraud and public policy fraud," "fraud in lack of cooperation defense," civil conspiracy, "claim under ORC 2307.60," "tri-partite fraud," "settlement fraud" and "detrimental reliance/promissory estoppel."

5. Plaintiffs' Motion for Leave to File their Fifth Amended Complaint (Doc. 281) is **DENIED.**

**IT IS SO ORDERED.**

                            */s/ Michael R. Barrett*
                            JUDGE MICHAEL R. BARRETT